UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

_____

)
GEORGE BUTLER,                                        )
                                                                      )         Case No. 19-cv-1425 (PJM)
                                        Plaintiff,           )
                                                                      )
                        v.                                            )
                                                                      )
LEVENDALE HEWBRW GERIATRIC CENTER   )
AND HOSPITAL, INC.,                                 )
                                                                      )
                                        Defendant.        )
                                                                      )
_____)

### MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION OF DEFENDANT'S MOTION TO DISMISS

COMES NOW Plaintiff, George Butler ("Plaintiff"), by and through his undersigned

counsel, and opposes Plaintiff's motion to dismiss and for his opposition, Defendant states the

following.

## I.  NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.

§§ 2000e-1, *et seq*., and Title 6 of the Maryland State Government Article ("Title 6"), Sections

20-601 to 20-610.  Plaintiff alleges racial discrimination, retaliation, and hostile work

environment in violation of the federal Title VII and the State Title 6 of the State Government

Article.

## II.  RELEVANT FACTS

Between September 2014 and November 2017, Defendant employed Plaintiff as a

Certified Respiratory Therapist.  Up until the time that Plaintiff complained about workplace racial discrimination and retaliation, Defendant had rated Plaintiff as an excellent employee.

Plaintiff worked at Defendant's site located at 2434 West Belvedere Avenue, Baltimore, Maryland.  Defendant employs in excess of 200 employees.  Defendant's human resources office was located in the same facility that Plaintiff worked in.  Defendant's supervisory, Brent Trimmer, worked in the same facility that Plaintiff worked in.  Defendant saw Trimmer on a daily basis.  Plaintiff worked with another Respiration Therapist named George Konstantinou at the same facility.

In or about August 2016, Plaintiff's co-worker - Konstantinou - began to harass and taunt Plaintiff in a racially insensitive and provocative manner.  On more than one occasion, Konstantinou told Plaintiff did not belong at Levindale (the employer's company) because Plaintiff is "Black."  Konstantinou's manner and demeanor indicated that he believed that "Black" people are inferior to "White" people.  As stated, Konstantinou made similar remarks to Plaintiff on more than one occasion.

On or about September 25, 2016, Plaintiff reported Konstantinou's remarks to his supervisor, Brent Trimmer.  Notwithstanding Plaintiff's desperation, Trimmer took no corrective actions.  Having found the employer to be indifferent, Plaintiff filed an administrative complaint (charge of discrimination) with the Baltimore Community Rekllations Commission alleging that Defendant discriminated against him based on race, harassment, and retaliationwith EEOC in September 2017.

Subsequent to his filing of an EEO action, Plaintiff was subjected to insults from other employees.  Other respiratory therapists began to unfairly criticize Plaintiff.  Defendant was

aware, due to the complaints by Plaintiff and the proximity of the occurrences in place and time, of the racial discrimination. Instead of protecting Plaintiff from the verbal attacks by his coworkers, the employer joined in the attacks by issuing to Plaintiff Corrective Action Notices in which the employer falsely alleged that Plaintiff was deficient in his job performance.

Prior to Plaintiff reporting Konstantinou's remarks to Plaintiff's supervisor, Plaintiff was rated as an outstanding employee. After Plaintiff reported the racial discrimination Plaintiff was unjustly subjected to negative performance reviews. On or about September 27, 2016, the employer held a meeting attended that included Brent Trimmer, George Konstantinou, and Human Resources specialist Ryan Lillis, and Plaintiff. In October/November 2017, Plaintiff sought medical attention for distress and depression. Plaintiff was diagnosed with mental anguish. The doctor recommended that Plaintiff take two weeks off from work to recuperate.

In or about January 2017, Konstantinou began making derogatory remarks about Plaintiff to patients, coworkers and managers. Among the remarks, Konstantinou stated that Plaintiff failed to do his work, was incompetent, and that that patients were not safe in Plaintiff's care.

On or about June 2017, Plaintiff was called into an office by a one Mrs. Ellen Davis, Ms. Irene Kamau, Mr. Ryan Lillis and handed a Corrective Action Notice, which plaintiff refused to sign. The Corrective Active Notice accused Plaintiff of being aggressive toward coworkers and staff members. Plaintiff denied the allegations.

Defendant issued two Corrective Action Notices to Plaintiff. Neither notice was valid. On or before November 5, 2017 due to the increasing hostility in the workplace, Plaintiff filed an appeal to upper management. Upper management took no action to protect Plaintiff from continued harassment. Plaintiff developed work-related stress in October/November 2017.

On or about November 22, 2017, plaintiff was granted FMLA on an intermittent basis for one year.

On November 21, 2017, Plaintiff resigned form the company. Plaintiff suffered a loss of income. Due to the racial discrimination, hostile environment, and retaliation, that Plaintiff endured he suffered loss of sleep, distress, loss of self esteem, mental anguish, fatigue, and depression.

### III. STANDARD OF REVIEW

#### A. Dismissal Pursuant to Fed.R.Civ.P. 12(b)(1)

In the Fourth Circuit, failure to exhaust administrative remedies is deemed jurisdictional. The failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim. *See Davis v. North Carolina Dep't of Corr.*, 48 F.3d 134, 138-40 (4th Cir.1995).

However, retaliation claims arising during or after an EEOC investigation are deemed exhausted when a plaintiff seeks to join them to a timely filed lawsuit on his original, exhausted claims, because it would be burdensome and wasteful to require a plaintiff to file a new EEOC charge instead of simply permitting him to assert that related claim in ongoing proceedings to adjudicate the underlying charge.

#### B Dismissal Pursuant to Fed.R.Civ.P. 12(b)(6)

Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly,* 550 U.S. at 555–56, 127 S.Ct. 1955; *see also Papasan v. Allain,* 478 U.S. 265,

286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting wombly, 550 U.S. at 570, 127 S.Ct. 1955); *Atherton v. District of Columbia Office of the Mayor,* 567 F.3d 672, 681 (D.C.Cir.2009).

A complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949. This amounts to a "two-pronged approach" under which a court first identifies the factual allegations entitled to an assumption of truth and then determines "whether they plausibly give rise to an entitlement to relief." *Id.* at 1950–51, 129 S.Ct. 1937. *Dura Pharm., Inc. v. Broudo,* 544 U.S. 336, 347, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005); *see also Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512–13, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). When the sufficiency of a complaint is challenged by a motion to dismiss under Rule 12(b)(6), the plaintiff's factual allegations must be presumed true and should be liberally construed in his or her favor. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993); *Phillips v. Bureau of Prisons,* 591 F.2d 966, 968 (D.C.Cir.1979); *see also Erickson,* 551 U.S. at 94, 127 S.Ct. 2197 (citing *Twombly,* 550 U.S. at 555–56, 127 S.Ct. 1955). The plaintiff must be given every favorable inference that may be drawn from the allegations of fact. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

//

//

# IV.  ARGUMENT

## A.    PLAINTIFF'S CONSTRUCTIVE DISCHARGE CLAIM IS WITHIN HIS EEOC CHARGING DOCUMENT

### 1.    The Court Has Jurisdiction Over the Constructive Discharge Claim

Defendant correctly cites that under EEOC law, the administrative charging document is the touchstone for proscribing and evaluating the extent of a subsequent judicial complaint.  That being said, the application of this doctrine is not a mathematical nor mechanical calculus.  Indeed, claims that are reasonably related or developed in a reasonable investigation are also deemed to be within the parameters of an administrative charging document.  In this particular case, Mr. Butler alleged in his EEO charge:

> I.      I began my employment with the above named Respondent on September 30,2014 as a Respiratory Care Worker. Beginning in September 2016, Iwas harassed by Mr. George Konstantinou (white) in which he made comments including but not limited to "you don't belong here because you're Black."  I complained about the harassment to Mr. Brent Trimmer (Manager) in September 2016.  However, no corrective action was taken.  The harassment continued until January 2017.  In March 2017, Iwas given an oral warning by Mr. Trimmer for being a no call no show.  In June 2017, Iwas written up by Mr. Trimmer for alleged unprofessionalism.  On October 27, 2017, I was written up by Ms. Laura Dura (Manager) for allegedly creating a hostile work environment.

> II.     I was not given a reason for the difference in treatment.

> Ill.    I believe I was discriminated against with respect to harassment and discipline based on my race (Black) and in retaliation for engaging in a protected activity in violation of Title VII of the Civil Rights Act of 1964, as amended.

The standard under the EEO law is that so long as the allegation in the judicial complaint

is reasonably related to the administrative charging document it is actionable. Indeed, the scope of the plaintiff's right to file a federal lawsuit is determined by the charge's contents. See *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir.2002). "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir.1996). Thus, a claim in formal litigation will generally be barred if the EEOC charge alleges discrimination on one basis, such as race, and the formal litigation claim alleges discrimination on a separate basis, such as sex. *See id.*; Bryant, 288 F.3d at 132-33. *Jones v. Calvert Group, Ltd.*, 551 F.3d 297 (4th Cir., 2009).

These examples of unsustainable cases are apposite to the Butler case at bar. First, contrary to the cited cases, Plaintiff does not start out alleging racial discrimination and then morph into sex, religion or national origin. The allegations in his judicial complaint are consistent in their modality and character to the race-based administrative charges in the initial complaint. In both complaints, Plaintiff alleges that he was treated differently due to his race.

Second, the charge of constructive discharge in the judicial complaint is the logical corollary or offspring of the race-based harassment that is literally addressed in Plaintiff's administrative complaint. There is no bait and switch. Contrary to Defendant's claim of alienation, the claim of constructive discharge is the logical and related claim to the claim of continuous and unrelenting abuse alleged in the administrative complaint. Accordingly, Defendant has failed to illustrate that the constructive discharge claim is not related, and is not entitled to a presumption truth for 12(b)(6) analysis.

2.     **Plaintiff Exhausted His Administrative Remedies as to the Constructive Discharge Claim and His Pre February 3, 2017 Claims**

Defendant argues that Plaintiff failed to exhaust his administrative remedies his claims that arose prior to February 3, 2017 and those that occurred after November 27, 2017. This is based on the argument that the window of allowable claims occurred 300 days prior to November because he allegedly failed to assert a constructive discharge claim before the EEOC nor allegedly or challenged any conduct occurring after October 27, 2017.

Plaintiff resigned on or about November 21, 2017. He filed his EEO complaint with EEOC in September 2017. This time line shows that Plaintiff's constructive discharge occurred after he had filed his EEO complaint. This time line shows that as regards the underlying charged of discrimination, Plaintiff's complaint was timely.

Under Title VII, retaliation claims, such as constructive discharge, are deemed to be properly "exhausted" when they are joined to a timely filed lawsuit. Retaliation claims arising during or after an EEOC investigation are deemed exhausted when a plaintiff seeks to join them to a timely filed lawsuit on his original, exhausted claims, because it would be burdensome and wasteful to require a plaintiff to file a new EEOC charge instead of simply permitting him to assert that related claim in ongoing proceedings to adjudicate the underlying charge. *Duplan v. City of N.Y.*, 888 F.3d 612 (2nd Cir., 2018).

In this matter, Plaintiff alleges that he was forced to resign from the company weeks after he filed his EEOC complaint. This allegation of retaliation is timely, causually connected and reasonably related to the underlying EEOC charge to be deemed "exhausted" for EEO action purposes. Thus, Defendant's argument that Plaintiff failed to exhaust his administrative

remedies is not supported by the facts nor the law.

### 3. Plaintiff Exhausted His Administrative Remedies for His Hostile Work Environment Claim

Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct. See 1 B. Lindemann & P. Grossman, Employment Discrimination Law 348-349 (3d ed. 1996) (hereinafter Lindemann) ("The repeated nature of the harassment or its intensity constitutes evidence that management knew or should have known of its existence"). The "unlawful employment practice" therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own. See Harris v. Forklift Systems, Inc., 510 U. S. 17, 21 (1993) ("As we pointed out in Meritor [Savings Bank, FSB v. Vinson, 477 U. S. 57, 67 (1986),] `mere utterance of an ... epithet which engenders offensive feelings in a[n] employee,' ibid. (internal quotation marks omitted) does not sufficiently affect the conditions of employment to implicate Title VII"). Such claims are based on the cumulative effect of individual acts. National Railroad Passenger Corporation v. Morgan, 536 U.S. 101 (2002).

Defendant asserts in its Motion to Dismiss that Plaintiff's EEO charge of hostile work environment falls outside of the 300-day window for the filing of an EEO complaint. Defendant asserts that Butler's hostile work environment claims should be dismissed as untimely. "The EEOC Charge states that Konstantinou's comment to Butler was made in September 2016, and that '[t]he harassment continued until January 2017.'"

This characterization of the EEO complaint is contrary to the facts. As clearly stated in the EEOC charging document that was filed by Plaintiff, he stated that the harassment he

suffered continued in one form or another until October 27, 2017. *See* Ex. 1. The complaint states that in March 2017, Plaintiff was subjected to unwarranted corrective action that Plaintiff alleged to be related to racial discrimination. He further alleges in the EEO complaint that in June and October, 2017, he was subjected to critical, negative writeups, as part of the racial discrimination that he faced from the employer.

In its argument to show that Plaintiff's hostile work environment claim is untimely, Defendant attempts to isolate Plaintiff's allegations and to deprive them of their collective thrust and meaning. The charging document is admittedly terse, however, it sets forth a number of continuing acts in a mosaic/pattern of discriminatory practices rather than a number of separate discrete acts. Although Plaintiff states that the harassment continued until January 2017, he also states in the same paragraph that after the harassment from his fellow employee stopped in January 2017, his employer continued to harass him until as least October 2017, which was only thirty (30) days prior to the filing of his EEO complaint. Thus, in construing the allegations as true and in crediting all reasonable inferences from said allegations, it is plausible that the discrimination, hostile environment and the retaliation was continuous from September 2016 until the day that Plaintiff was forced to resign in November 2017.

### 3. Plaintiff's Entire EEO Complaint Is Timely

In section I of its argument, Defendant asserts that Plaintiff's claims, in one way or another are untimely. Defendant's assertions are unsupported.

Defendant Wrongfully Alleges that Plaintiff's State Law Claims Are Untimely

Defendant points to Section 6-1004(c)(1) of the State Government Article for the proposition that Plaintiff was required to file his state claims within six months of the actionable

conduct. Defendant's arguments fail for two reasons. First, Defendant incorrectly uses January 2017 as the last date that Plaintiff alleges he was subject to racial discrimination. This interpretation of the claim is self-serving, misleading, and contrary to the facts. Plaintiff states that he was subjected to racial animus from September 2016 until he left Defendant's employment. By this analysis, Plaintiff's claims were clearly within the six month window.

Second, Section § 20-1013(a) of the State Government Article states that in addition to the right to make an election under § 20-1007 of this subtitle, a complainant may bring a civil action against the respondent alleging an unlawful employment practice, if (1) the complainant initially filed a timely administrative charge or a complaint under federal, State, or local law alleging an unlawful employment practice by the respondent; (2) at least 180 days have elapsed since the filing of the administrative charge or complaint; and (3) the civil action is filed within 2 years after the alleged unlawful employment practice occurred.

Under this section of the State Government Article, Plaintiff can file his state law claims so long as he filed a timely *federal* claim. Defendant does not dispute that Plaintiff filed a timely federal law claim. Thus, under Section 20-1013(a), Plaintiff's state law claims are timely.

Defendant argues that Plaintiff's discrimination claims in Counts One and Four of the First Amended Complaint should be substantially narrowed. The idea is that the Court should consider only those allegedly discriminatory acts occurring on or after February 3, 2017 under Title VII, because February 3, 2017 is 300 days before November 30, 2017 and only the alleged acts occurring on or after May 30, 2017 under the FEPA.

This argument lacks merit. As stated above under EEOC law, as long as a discrete discriminatory act occurred within the statutory time period, the EEO charge is timely.

**B.    PLAINTIFF HAS PLEADED A SUFFICIENT RACIAL BIAS CLAIM**

A plaintiff is not required to plead facts that constitute a prima facie case in order to survive a motion to dismiss, see *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-15, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). See also *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir.2009). *Coleman v. Md. Court of Appeals*, 626 F.3d 187 (4th Cir., 2010).

In its Motion to Dismiss, Defendant refers to *Coleman v. Md. Court of Appeals* for the proposition that Plaintiff has failed to plead sufficient facts to make out a race-based disparate treatment claim.  This reliance on *Coleman* is infirm.  In *Coleman*, the employee failed to allege facts that formed a plausible basis for the claim of a race-based termination.  Here, by contrast, Plaintiff alleges in paragraph 17 of his complaint that he was subjected to racially-tinged insults and taunts by a co-worker.  In paragraph 20 of his complaint, Plaintiff alleged that he reported the harassment to his supervisor.  In paragraph 21 of his complaint, he alleged that the supervisor took no corrective action.  In paragraph 23 of his complaint, he alleged that he was subjected to racial taunts by other employees.  In paragraph 27, Plaintiff stated that he had been rated as an outstanding employee prior to the racial discrimination.  In paragraph 26, Plaintiff alleged that management began to harass him by issuing him unwarranted corrective action notices.  In paragraph 30, Plaintiff stated that the racial animus on the job caused hin to suffer distress and depression.  In paragraphs 33 and 34 Plaintiff alleged that the racial animus continued unabated. In paragraph 40, Plaintiff allged that he complained to upper management about the racial disparate treatment to no avail.  In paragraph 51, Plaintiff alleged that he resigned from the

company due to racial discrimination.

Plaintiff's complaint is factually distinguishable from the that in *Coleman*, in that Plaintiff has not merely uttered conclusory statement but instead has offered a series of fact-based allegations that put defendant on notice of the elements of a racially-based disparate treatment violation of Title VII.

The Federal Rules of Civil Procedure mandate that all pleadings shall be liberally construed to do substantial justice. 5 Wright and Miller, Federal Practice and Procedure: Civil § 1286, pp. 381-384. This mandate has been characterized as "the heart" of the rules on pleading. 2A Moore's Federal Practice, ¶ 8.34, p. 1895 (2d ed. 1968). Pleadings are construed in the pleader's favor and, if possible, effect will be given to all its averments. 5 Wright and Miller, Federal Practice and Procedure: Civil § 1286, pp. 381-384 (1969).

It is well settled that a complaint may not be dismissed unless it is clearly without merit. 2A Moore's, *supra*, ¶ 12.08, p. 2271. Stated otherwise, it must appear to a certainty that plaintiff can prove no set of facts in support of his claim that would entitle him to relief. Id. at 2274. Mere vagueness or lack of specificity is not a ground for a motion to dismiss, but rather for a motion for a more definite statement. Moore's, *supra*, at pp. 2274-2285.

### 1. Plaintiff Has Alleged an Adverse Employment Action

In his complaint. Plaintiff alleges that he was forced to resign due to the harassment, racial animus, and the abusive working conditions that were part of a pattern of racially motivated discriminatory practices. Under EEO law, constructive termination is an adverse employment action that is actionable. The facts alleged by Plaintiff include taunts by his co-workers that he is inferior to white people due to his race (black). In the complaint, Plaintiff

alleges that these attacks were directed to him, to his co-workers and to the patients who attended

his medical center.  These abusive conditions included adverse job performance ratings and a

refusal of management to curtain the racially motivated harassment.  Plaintiff alleges that he was

forced to resign due to the intolerable working conditions.

These allegations meet the test to survive a motion to dismiss in that if true, establish a

plausible claim for adverse employment consequence.  Having raised a plausible claim of

adverse employment action attributable to Defendant, Plaintiff has meet his burden at thus stage.

    2.    **Plaintiff Has Alleged He was Treated Different
        From Persons Outside His Class**

In Section II. B. of its Motion to Dismiss, Defendant asserts that Plaintiff has failed to

allege facts to establish the fourth element of a discrimination claim.  Defendant states that aside

from his own race, Plaintiff failed to identify the race of his alleged harasser.  This assertion is

incorrect.  In the EEO charge, Plaintiff wrote "I was harassed by Mr. George Konstantinou

(**white**)."  He further states that he continued to be harassed by his manager in June 2017.  Taken

as a comprehensive whole, Plaintiff alleges that he an African American was harassed by a

Caucasian fellow worker who taunted Plaintiff that "black" people did not belong in the position

of certified respiratory Therapist.  He then states that management continues to harass him

leading to his constructive discharge by Defendant.

A plaintiff may prove that an employer took action with discriminatory or retaliatory

intent through direct evidence or through the burden-shifting framework of McDonnell Douglas

*Corp. v. Green* . *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015) (citing

McDonnell Douglas Corp. v. Green , 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) ).

Under the burden-shifting framework, the plaintiff must first establish a prima facie case of retaliation by showing: "(1) he engaged in a protected activity; (2) the employer acted adversely against him; and (3) there was a causal connection between the protected activity and the asserted adverse action." *See Ziskie v. Mineta*, 547 F.3d 220, 229 (4th Cir. 2008). After the prima facie showing is made, "[t]he burden then shifts to the [employer] to show that its purportedly retaliatory action was in fact the result of a legitimate non-retaliatory reason." *Foster*, 787 F.3d at 250. "If the employer makes this showing, the burden shifts back to the plaintiff to rebut the employer's evidence by demonstrating that the employer's purported nonretaliatory reasons were not its true reasons, but were a pretext for discrimination." *Strothers v. City of Laurel*, 895 F.3d 317 (4th Cir., 2018).

Plaintiff has met this standard in that he has alleged that he is in a protected class, that the were adverse consequences taken against him *i.e.* harassment on the job, required leave to address employment-induced depression, and constructive eviction. Thus, at this stage, Plaintiff has set forth a plausible case and the motion to dismiss this count should be denied.

## C. PLAINTIFF HAS ALLEGED AN ACTIONABLE HOSTILE ENVIRONMENT CLAIM

In evaluating a hostile work environment claim, the court "looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." The first element of a hostile environment claim, unwelcome conduct, is not a high hurdle. As this Court has repeatedly held, an employee can demonstrate that certain conduct is unwelcome simply by voicing his objection to the alleged harasser or to the employer. *E.g., E.E.O.C. v. Cent.*

*Wholesalers, Inc.*, 573 F.3d 167, 175 (4th Cir. 2009); *Strothers v. City of Laurel*, 895 F.3d 317 (4th Cir., 2018). However, even a single statement or a single act may be sufficient to establish a hostile work environment. The test set forth by the Supreme Court is whether the alleged conduct is "sufficiently severe or pervasive," written in the disjunctive; not whether the conduct is "sufficiently severe and pervasive." A single, sufficiently severe incident, then, may suffice to create a hostile work environment. See EEOC Compliance Manual, Section 15: Race and Color Discrimination 37 (2006) ("a single, extremely serious incident of harassment may be sufficient to constitute a Title VII violation"). ("The more severe the harassment, the less pervasive it needs to be, and vice versa."). (Concurring opinion, Ayissi–Etoh v. Fannie Mae, 712 F.3d 572, 577 (D.C.Cir. 2013).

To prevail on a hostile work environment claim, a plaintiff must first show that he or she was subjected to "discriminatory intimidation, ridicule, and insult" that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

Whether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L. Ed.2d 295 (1993). These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Id.* The effect on the employee's psychological well-being is, of course, relevant to determining whether the plaintiff actually found the environment abusive. *Id.* But while psychological harm, like any other

relevant factor, may be taken into account, no single factor is required. *Id.* Courts and commentators alike agree that a single physical act—such as a physical assault—can create a hostile work environment. *See, e.g., Turnbull v. Topeka State Hospital*, 255 F.3d 1238, 1243 (10th Cir.2001) (case concerning sexual assault where court stated: "Because frequency is merely one factor in the analysis, an isolated incident may suffice if the conduct is severe and threatening."); *Smith v. Sheahan*, 189 F.3d 529, 534 (7th Cir.1999) (" 'extremely serious' acts of harassment" like physical assault may be severe and need not also be pervasive) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)); *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1305 (2d Cir.1995) ("even a single incident of sexual assault sufficiently alters the conditions of the victim's employment and clearly creates an abusive work environment for purposes of Title VII liability"), abrogated on other grounds by *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).

As regards this matter, Plaintiff, at this stage of the case must allege a plausible claim of abusive conditions, attributable to Defendant that altered the terms/nature of the employment relationship. Here, Plaintiff states he was subjected to harassment form more than one co-worker; he was unable to get protection from the employer; he was subjected to unjust attacks on his performance after he had complained about racial animus and after previously known to be an exceptional employee, and he needed medical attention to withstand the hostile/toxic environment and he needed to leave the job due to stress.

**D.     PLAINTIFF HAS ALLEGED A VIABLE CONSTRUCTIVE DISCHARGE CLAIM**

A constructive discharge occurs when an employer creates intolerable working

conditions in a deliberate effort to force the employee to resign. *Johnson v. Shalala*, 991 F.2d 126, 131 (4th Cir.1993), cert. denied, --- U.S. ---, 115 S.Ct. 52, --- L.Ed.2d ---- (1993). Deliberateness can be proven by actual or circumstantial evidence, including evidence of "actions that single out a plaintiff for differential treatment." *Id.* The doctrine of constructive discharge protects an employee "from a calculated effort to pressure him into resignation through the imposition of unreasonably harsh conditions, in excess of those faced by his co-workers." *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir.1985), cert. denied, 475 U.S. 1082, 106 S.Ct. 1461, 89 L.Ed.2d 718 (1986).

Defendant correctly states that not all resignations constitute constructive discharge. However, each case must be evaluated on its facts. In deciding a motion to dismiss, the Court is wont to make factual determinations, the only issue at the dismissal stage is whether such an outcome is plausible. It is plausible that Plaintiff, who was an excellent employee, according to the EEO charge and the complaint, made a charge of racial discrimination ands that thereafter, he was subjected to harassment for white co-workers and from management. He suffered stress and depression and that the circumstances eventually forced him to resign. This fact pattern meets the test of a cognizable claim.

**E.     Plaintiff Has Alleged a Sufficient Retaliation Claim in Violation of Title VII**

Title VII's Opposition Clause, by its terms, prohibits retaliation against an employee who has "opposed any practice made an unlawful employment practice" by Title VII. 42 U.S.C. § 2000e–3(a). The Supreme Court has defined "oppose" in this context by looking to its ordinary meaning: "to resist or antagonize ...; to contend against; to confront; resist; withstand, ... to be hostile or adverse to, as in opinion." *Crawford v. Metro. Gov't of Nashville & Davidson Cnty.,*

*Tenn.*, 555 U.S. 271, 276, 129 S.Ct. 846, 172 L.Ed.2d 650 (2009) (internal citations omitted) (quoting Webster's New International Dictionary 1710 (2d ed.1958); Random House Dictionary of the English Language 1359 (2d ed.1987)).  This broad definition led the Court to conclude that the threshold for oppositional conduct is not onerous.  Instead, "[w]hen an employee communicates to her employer a belief that the employer has engaged in ... a form of employment discrimination, that communication virtually always constitutes the employee's opposition to the activity." *Crawford*, 555 U.S. at 276, 129 S.Ct. 846 (internal quotation marks omitted) (citing 2 EEOC Compliance Manual §§ 8–II–B(1), (2), p. 614:0003 (Mar. 2003)). This Circuit, as well as the other Courts of Appeals, also has articulated an expansive view of what constitutes oppositional conduct, recognizing that it "encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir.1998); see also *Collazo v. Bristol–Myers Squibb Mfg., Inc.*, 617 F.3d 39, 47–48 (1st Cir.2010) (recognizing that even non-verbal conduct may constitute protected activity); *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 516 (6th Cir.2009) (protected activity includes "complain[ing] about unlawful practices to a manager, the union, or other employees"); *Moore v. City of Philadelphia*, 461 F.3d 331, 343 (3d Cir.2006) (quoting *Curay–Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 135 (3d Cir.2006)) (protected activity covers "informal protests of discriminatory employment practices[,] including making complaints to management"); *McDonnell v. Cisneros*, 84 F.3d 256, 262 (7th Cir.1996) (protected activity includes endeavoring to obtain an employer's compliance with Title VII).

"And while the oppositional activity must be directed to "an unlawful employment

practice" under Title VII, 42 U.S.C. § 2000e–3(a), this Circuit's recent en banc opinion in Boyer–Liberto made clear that we should also interpret 'unlawful employment practice' broadly." 786 F.3d at 282. Thus, "an employee is protected when she opposes 'not only ... employment actions actually unlawful under Title VII **but also employment actions [she] reasonably believes to be unlawful,'** " and the Title VII violation to which the oppositional communication is directed "may be complete, or it may be in progress." *Id.*   In sum, nothing in the language of the Opposition Clause nor in its interpretation by the courts supports a myopic analysis under which an employee's opposition must be evaluated as a series of discrete acts.  42 U.S.C. § 2000e–3(a).  On the contrary, as the Third Circuit has observed in a similar context, "[t]hese determinations depend on the totality of the circumstances, as [a] play cannot be understood on the basis of some of its scenes but only on its entire performance, and similarly, a discrimination analysis must concentrate not on individual incidents, but on the overall scenario." Moore, 461 F.3d at 346 (second alteration in original) (citations and internal quotation marks omitted). Likewise, in Collazo, where the plaintiff had arranged meetings with the HR department for a co-worker and then complained to HR about problems with his company's ongoing internal investigation of the co-worker's complaint, the First Circuit, reviewing the full range of the plaintiff's conduct, held that his "persistent efforts to help [the victim] initiate her sexual harassment complaint and urge Human Resources to act upon that complaint" constituted protected opposition activity. *Id.* at 43–44, 47.

    This holistic approach is also consistent with the broad remedial purpose of Title VII: to root out the "cancer [of discrimination] in [the] workplace." *Boyer–Liberto*, 786 F.3d at 284. This is particularly so in the retaliation context, where Title VII "must be read 'to provide

broader protection for victims of retaliation than for [even] victims of race-based, ethnic-based, religion-based, or gender-based discrimination,' because 'effective enforcement could ... only be expected if employees felt free to approach officials with their grievances.' " *Id.* at 283. *See also Thompson*, 562 U.S. at 174, 131 S.Ct. 863 ("Title VII's antiretaliation provision prohibits any employer action that 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.' "). Acknowledging and protecting activities that, viewed as a whole, oppose unlawful discrimination will promote the prompt and full reporting on which Title VII enforcement depends. *DeMasters v. Carilion Clinic*, 796 F.3d 409, 417–18 (4th Cir. 2015). The scope of Title VII's anti-retaliation provision, § 2000e-3, is broader than the anti-discrimination provision in at least two respects. First, as the Supreme Court has held, "the antiretaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm" because "[a]n employer can effectively retaliate against an employee by taking actions not directly related to his employment or by causing him harm outside the workplace." Burlington , 548 U.S. at 63, 67, 126 S.Ct. 2405. Accordingly, retaliatory actions need not "affect the terms and conditions of employment" to come within Title VII's prohibition. Id. at 64, 126 S.Ct. 2405. However, retaliatory actions do have to be "materially adverse"—such that they "might have dissuaded a reasonable worker" from engaging in protected activity. Id. at 68, 126 S.Ct. 2405 ; see also Thompson v. N. Am. Stainless, LP , 562 U.S. 170, 174, 131 S.Ct. 863, 178 L.Ed.2d 694 (2011) (reaffirming same). Second, and more importantly for this case, this Court, en banc , has held that the anti-retaliation provision protects employees even when they complain of actions that are not actually unlawful under Title VII. Boyer-Liberto , 786 F.3d at 282. Instead, complaining employees are protected if, at the time of their complaint, they "have an objectively

reasonable belief in light of all the circumstances that a Title VII violation has happened or is in progress." Id. (citation omitted). Because "Title VII depends for its enforcement upon the cooperation of employees who are willing to file complaints and act as witnesses," Burlington , 548 U.S. at 67, 126 S.Ct. 2405, the greater breadth of the anti-retaliation provision ensures that employees feel free to come forward with their grievances, even when a violation is not yet conclusive based on what one witness might know. See Boyer-Liberto , 786 F.3d at 283.

Retaliation claims arising during or after an EEOC investigation are deemed exhausted when a plaintiff seeks to join them to a timely filed lawsuit on his original, exhausted claims, because it would be burdensome and wasteful to require a plaintiff to file a new EEOC charge instead of simply permitting him to assert that related claim in ongoing proceedings to adjudicate the underlying charge. But there is no compelling reason—efficiency-related or otherwise—to grant a similar exception to a plaintiff like Duplan, who deliberately abandoned his underlying claim of discrimination by failing to file a timely suit on those claims. Accordingly, we reject Duplan's argument that we should consider the alleged acts of retaliation that were not timely presented to the EEOC after he failed to file a timely suit on the charges submitted in his 2011 EEOC complaint. Instead, we consider only those acts that occurred within 300 days of his 2014 EEOC complaint, and were thereby properly exhausted, as well as related claims of retaliation for filing the later EEOC charge. *Duplan v. City of N.Y.*, 888 F.3d 612 (2nd Cir., 2018).

With respect to causal relationships between the protected activity and the alleged retaliation, as this Court has held, establishing a "causal relationship" at the prima facie stage is not an onerous burden. *See Foster* , 787 F.3d at 251; *Burgess v. Bowen*, 466 F. App'x 272, 282 (4th Cir. 2012) ("[V]ery little evidence of a causal connection is required to establish a prima

facie case of retaliation." (citation omitted) ). Purported victims of retaliation do not have to show at the prima facie stage that their protected activities were but-for causes of the adverse action. *Foster*, 787 F.3d at 251 (holding that plaintiff need not establish but-for causation until pretext stage of burden-shifting framework). An employee may establish prima facie causation simply by showing that (1) the employer either understood or should have understood the employee to be engaged in protected activity and (2) the employer took adverse action against the employee soon after becoming aware of such activity. *See Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994). In this case, the time period of six months is well within the time periods that this Court has held to be actionable.

## V. CONCLUSION AND REQUEST FOR RELIEF

WHEREFORE, for the foregoing reasons, Plaintiff requests that the Court deny the Motion to Dismiss.

Respectfully submitted,

/s/ *Raouf M. Abdullah*

Raouf M. Abdullah, Attorney for Plaintiff
Bar No. 15890

## CERTIFICATE OF SERVICE

Service is accomplished by the Court's electronic filing system.

/s/ *Raouf M. Abdullah*